UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| MARK ANTHONY SHELTON, | ) |
| *Plaintiff*, | ) |
| v. | ) Case No: 2:20-cv-182 |
| | ) Judge Christopher H. Steger |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security Administration, | ) |
| *Defendant*. | ) |

## MEMORANDUM OPINION AND ORDER

### I. Introduction

Plaintiff Mark Anthony Shelton seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from his denial of Supplemental Security Income disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner") under Title XVI of the Act, 42 U.S.C. §§ 401-34. [*See* Doc. 1]. The parties consented to the entry of final judgment by the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(c), with an appeal to the Court of Appeals for the Sixth Circuit. [Doc. 19].

For the reasons that follow, Plaintiff's Motion for Judgment on the Administrative Record [Doc. 24] will be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 26] will be **GRANTED**, and judgment will be entered **AFFIRMING** the Commissioner's decision.

### II. Procedural History

On May 17, 2018, Plaintiff applied for disability insurance benefits, alleging disability as of March 10, 2018. (Tr. 15). Plaintiff's claims were denied initially as well as on reconsideration. *Id.* As a result, Plaintiff requested a hearing before an administrative law judge. *Id.*

At a hearing that included Plaintiff's attorney on August 8, 2019, Plaintiff amended the alleged onset date to May 17, 2018. *Id.* Administrative Law Judge James Dixon (the "ALJ") heard testimony from Plaintiff and a vocational expert. (Tr. 15, 26). The ALJ then rendered his decision on October 4, 2019, finding that Plaintiff was not under a "disability" as defined by the Act. (Tr. 25).

Following the ALJ's decision, Plaintiff requested that the Appeals Council review the denial; but, that request was denied. (Tr. 1). Exhausting his administrative remedies, Plaintiff then filed his Complaint [Doc. 1] on August 21, 2020, seeking judicial review of the Commissioner's final decision under § 405(g). The parties filed competing dispositive motions, and this matter is ripe for adjudication.

### III. Findings by the ALJ

The ALJ made the following findings concerning Plaintiff's application for benefits:

1. The claimant has not engaged in substantial gainful activity since May 17, 2018, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine; major depressive disorder; bipolar disorder; and post-traumatic stress disorder (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) where he retains the ability to lift and/or carry twenty pounds occasionally and ten pounds frequently. He can stand, walk, and/or sit for about six hours each in an eight-hour day, with normal breaks. He can engage in unlimited pushing and/or pulling (including the operation of hand and foot controls) within the aforementioned exertional limitations. He can occasionally climb ladders, ropes, or scaffolds. He can frequently perform all other postural activities. He has no manipulative,

visual, or communicative limitations. He must avoid all exposure to hazards such as machinery and heights. He retains the ability to engage in occasional social interactions.

5. The claimant is unable to perform any past relevant work (20 C.F.R. § 416.965).

6. The claimant was born on September 17, 1969 and was 48 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 C.F.R. § 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined by the Social Security Act, since May 17, 2018, the date the application was filed (20 C.F.R. § 416.920(g)).

Tr. at 17-25.

### IV.  Standard of Review

This case involves an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if he: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

The determination of disability is an administrative decision. To establish a disability, a plaintiff must show that he is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result

in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The following five issues are addressed in order: (1) if a claimant is engaging in substantial gainful activity, she is not disabled; (2) if a claimant does not have a severe impairment, he is not disabled; (3) if the claimant's impairment meets or equals a listed impairment, he is disabled; (4) if the claimant is capable of returning to work he has done in the past, he is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy, he is not disabled. *Id.* If, at one step, an ALJ makes a dispositive finding, the inquiry ends without proceeding to the next. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that he cannot return to his former occupation, then the burden shifts to the Commissioner to show that there is work in the national economy that the claimant can perform considering his age, education, and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review is whether substantial evidence supports the Commissioner's findings and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is contrary evidence, the Commissioner's findings must be affirmed if evidence exists to support the Commissioner's findings. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). Courts may not reweigh the

evidence and substitute their judgment for that of the Commissioner because substantial evidence exists to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes a "zone of choice" within which decision-makers can go either way without court interference. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

Courts may consider any evidence in the record, regardless of whether the ALJ cited to it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). But courts may not consider evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Courts are also not obligated to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. August 18, 2009) (stating that assignments of error not made by claimant were waived). Further, "issues [that] are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

## V. Analysis

Plaintiff contends the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence because the ALJ failed to properly weigh the opinion of treating physician, Linda M. Harris, M.D. Specifically, Plaintiff claims the ALJ's finding of Dr. Harris' January 2017 opinion as unpersuasive was error because: (1) contrary to the ALJ's claim, Dr. Harris' opinion was consistent with diagnostic evidence; (2) any representation by the ALJ that imaging was not remarkable would be mischaracterizing the evidence; (3) the ALJ failed to discuss how imaging was inconsistent with Dr. Harris' opinion; (4) examinations revealed a host

of findings consistent with Dr. Harris' opinion; and (5) the ALJ failed to build a logical bridge between the evidence and his conclusion regarding Dr. Harris. The Court will address these arguments in turn.

A.  **Diagnostic Evidence**

The ALJ stated that Dr. Harris' January 2017 opinion was "inconsistent with the imaging studies and examination notes throughout the record." (Tr. 23). Plaintiff claims this was error because "the diagnostic evidence reveals Plaintiff's spine impairments were severe in nature." [Doc. 25 at 9]. Plaintiff first highlights the results of an MRI from November 2016 with particular attention drawn to "moderate right foraminal *impingement*…at C3-C4" and "shallow disc protrusion mildly *impressing* the ventral cord…at C5-C6." *Id.* at 10 (emphasis in Plaintiff's memorandum). Plaintiff also cited an April 2019 MRI that "revealed progressive worsening in disease of the cervical spine as compared to imaging from 2016" and a March 2019 needle electromyogram that "showed evidence of *moderate* chronic denervation changes." *Id.* (emphasis in Plaintiff's memorandum).

As an initial matter, the November 2016 MRI took place before Plaintiff's alleged onset date, during a time period where Plaintiff was already adjudged to be "not disabled" in a previous application for disability. (*See* Tr. 36). However, it gives some context to the April 2019 finding regarding disease progression.

Methodologically, the Court is not limited to looking only at the portion of the ALJ's opinion addressing Dr. Harris' medical opinion. *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.). In evaluating the ALJ's written support

6

Case 2:20-cv-00182-CHS   Document 29   Filed 03/31/22   Page 6 of 13   PageID #: 1073

for his conclusion regarding Dr. Harris' opinion, the Court started with the ALJ's direct statements on page 23 of the transcript. However, because the ALJ cited "imaging studies and examination notes throughout the record," the Court also looked to the ALJ's statements regarding imaging studies and examination notes on page 20 and 21 of the transcript, where the ALJ discussed these topics in relation to finding them inconsistent with Plaintiff's subjective symptoms. Because Plaintiff argues that his subjective symptoms and Dr. Harris' opinion are consistent with each other and with the imaging studies and examination notes, this approach logically follows.

The ALJ supported his conclusion by recognizing the structural findings of the April 2019 MRI (as well as April 2019 X-rays), but he contrasted those findings with the results of the needle electromyogram and a March 2019 nerve conduction study. (Tr. 20-21). These tests reveal functional effects of Plaintiff's structural abnormalities. The ALJ's focus on *effects* is sound when determining whether Plaintiff's limitations, as opined by Dr. Harris, are consistent with objective tests because the effects are more probative of functional limitations than the structural findings in a nerve impressment/impingement scenario. Specifically, the ALJ noted that the needle electromyogram and nerve conduction study showed "moderate chronic denervation changes," "mild bilateral median neuropathy,"[1] and "mild to moderate bilateral ulnar neuropathy." (Tr. 21). None of these effects are "severe in nature."

As to the structural findings and any other imaging studies, the ALJ was evaluating them in conjunction with examination notes in the record. For instance, the ALJ was also comparing the opinion of Dr. Harris with the opinion of State agency physical health consultant Reeta

---

[1] The ALJ actually over-credited Plaintiff with "mild bilateral median neuropathy" as the medical record actually says it was of "*minimal* severity on the right and mild severity on the left." (Tr. 747) (emphasis added).

7

Case 2:20-cv-00182-CHS   Document 29   Filed 03/31/22   Page 7 of 13   PageID #: 1074

Misra, M.D. The regulations are clear that an ALJ may rely on opinions from various acceptable medical sources, including State agency medical consultants. *See* 20 C.F.R. § 404.1527. In her report, Dr. Misra opined that Plaintiff's subjective symptoms were not consistent with the medical evidence of record and she recommended an RFC with significantly lighter restrictions than those opined by Dr. Harris (Tr. 100). Dr. Misra's determination is further supported by the fact that her opinion was over two years after Mr. Harris', allowing her to review records not available to Dr. Harris, including multiple records of medical visits both before and after the alleged onset date. (*See* Tr. 99-100). Further, the structural findings highlighted by Plaintiff were all categorized as either minimal, mild, or moderate. [Doc. 25 at 9-10].

In sum, there is evidence in the record to support the ALJ's claim that Dr. Harris' opinion was inconsistent with imaging studies and examination notes.

### B. Mischaracterization of Evidence

Plaintiff also claims, "To the extent that the ALJ would have this Court believe that the imaging was not remarkable, he would be mischaracterizing the evidence." [Doc. 25 at 10]. Plaintiff specifically complains that the "ALJ made no mention of the impingement of Plaintiff's spinal cord" and did not "acknowledge that Plaintiff's spinal disease was progressively worsening as compared to imaging from 2016." *Id.* at 10-11.

An ALJ is not "required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010). Here, the ALJ did not discuss every finding in the record, but he gave a representative and accurate description of Plaintiff's imaging results as noted above.

Further, as noted above, the ALJ may rely on the opinions of government medical examiners. Here, the ALJ utilized the RFC recommendation of Dr. Misra, who, in addition to a voluminous stack of other evidence, specifically cited "some nerve root impingement" in her report. (Tr. 99). The ALJ noted how persuasive he found her opinion based on many factors, including the detailed explanation she gave to support her opinion. (Tr. 23).

As for the "progressive worsening," Plaintiff fails to fully detail the April 2019 findings. Plaintiff repeatedly omits the fact that the record actually says, "Overall *slight* progressive worsening in disease relative to the 2016 exam." (Tr. 635, 667) (emphasis added). Considering Plaintiff's 2016 findings were from a period with a "not disabled" determination, a slight progressive worsening over a 29-month period is not incongruous with the ALJ's representation of the evidence.

Thus, the Court finds that the ALJ did not mischaracterize the evidence.

### C. Failure to Discuss Imaging Rationale

Plaintiff avers that "the ALJ failed to engage in any discussion that might inform this Court why he concluded that this imaging, which reveals impingement and impression upon the spinal cord, was somehow inconsistent with the limitation identified by Dr. Harris." Plaintiff cites *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004) to support his claim that the ALJ erred in this manner.

However, the passage cited in *Wilson* deals specifically with the antiquated requirement to "give good reasons" that was attached to the treating physician rule. The treating physician rule only applies to claims filed before March 27, 2017. *Compare* 20 C.F.R. § 404.1520c, *with* 20 C.F.R. § 404.1527. Since Plaintiff filed his claim on May 17, 2018, the treating physician rule does not apply and there is no requirement to "give good reasons." Instead, the regulations

require the ALJ to discuss the supportability and consistency of medical opinions. 20 C.F.R. § 404.1520c. But even within this requirement, there is no mandate to discuss specific parts of the record such as each piece of an imaging result or treatment note. *See id.*

Notwithstanding the lack of a mandate, the ALJ provided specific discussion regarding imaging studies and examination notes. As noted above, the ALJ addressed these issues in an earlier part of his opinion that also logically applies to his finding regarding Dr. Harris' opinion. The ALJ noted structural findings, then reasonably focused on tests showing the physical effects of those findings. (Tr. 20). Further, in the paragraph regarding Dr. Harris' January 2017 opinion, the ALJ gave multiple reasons for why he did not find Dr. Harris opinion to be persuasive. Those reasons just did not happen to be about imaging studies.

Therefore, the ALJ did not err in relation to discussing his rationale regarding imaging studies and Dr. Harris' opinion.

### D. Examination Findings

Plaintiff also details extensive examination findings, treatment, and treatment notes to support Dr. Harris' opined limitations. However, Plaintiff's list amounts to a partial picture of Plaintiff's condition. Plaintiff certainly has some findings through the years that would support some of Dr. Harris' opined limitations. However, the regulations require the ALJ to "consider all evidence in your case record." 20 C.F.R. § 404.1520(a)(3). Plaintiff fails to cite the evidence from the record that undermines Dr. Harris' opined limitations. Just regarding Plaintiff's cervical degenerative disc disease, Plaintiff does not address cervical manual muscle testing results beyond the left sided C5 nerve root level, grip strength results, conservative treatment, or improvements with physical therapy. The ALJ cited all these along with some of the findings cited by Plaintiff. (Tr. 20-22).

10

Case 2:20-cv-00182-CHS   Document 29   Filed 03/31/22   Page 10 of 13   PageID #: 1077

Of particular concern is Plaintiff's citation to "limited range of motion in the neck due to pain, wincing, and guarding even with light palpation, and moderate tenderness to palpation of the lumbar spine." [Doc. 25 at 11]. This finding, from prior to the alleged onset date,[2] is greatly contradicted by a finding from Ronald Hart, M.D., that was after the alleged onset date.[3] Dr. Hart found Plaintiff had *no spinal tenderness to palpation*. (Tr. 775). Plaintiff even cites other information from Dr. Hart's report while ignoring this directly damaging evidence. This example is illustrative, but not exhaustive, of the problem with Plaintiff's argument regarding extensive evidence supporting Dr. Harris' opinion.

Thus, the ALJ did not err in evaluating evidence that supported Dr. Harris' opinion.

### E. Logical Bridge

Finally, Plaintiff contends that the ALJ did not build a logical bridge between the evidence and Dr. Harris' opined limitations. [Doc. 25 at 12-13]. Plaintiff then cites *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013), to demonstrate that the ALJ was required to address the evidence in the record that supported Dr. Harris' opinion. However, as above regarding *Wilson*, the passage in *Gayheart* involved the treating physician rule which does not apply to this case. 710 F.3d 365. However, *Gayheart* is different in that, in a specific context, the Sixth Circuit found the ALJ should have addressed the findings of a treating therapist that would have supported the conclusions of a treating physician. *Id.* at 378-79.

Here, parsing the particulars of the applicability of *Gayheart* to this situation is unnecessary because, as evidenced by the previous discussion above, the ALJ built a logical bridge between the evidence and the result. The ALJ devoted three paragraphs to Plaintiff's cervical degenerative disc disease—one each to test results, examination notes, and treatment.

---

[2] This medical note is dated August 9, 2017 (Tr. 321), while the alleged onset date is May 17, 2018. (Tr. 15).
[3] Dr. Hart's medical note is dated October 31, 2018. (Tr. 773).

The ALJ also devoted three paragraphs to Plaintiff's lumbar degenerative disc disease—again one each to test results, examination notes, and treatment. The ALJ wrote paragraphs addressing Plaintiff's activities of daily living regarding physical impairments, examination notes regarding mental impairments, activities of daily living regarding mental impairments, and conservative treatment regarding mental impairments. Merely writing paragraphs would be insufficient, but the ALJ filled each paragraph with explanations supporting his RFC determination.

The ALJ also wrote explanatory paragraphs regarding Dr. Misra's physical health opinion and Dr. Victor O'Bryan's mental health opinion. He even wrote separate paragraphs for Dr. Harris' February 2016 letter and her January 2017 physical health opinion. Each of these paragraphs gave multiple reasons supporting the ALJ's rationale in each area. While the ALJ certainly did not address each piece of evidence supporting a more restrictive RFC, the regulations do not require such. *See* 20 C.F.R. § 404.1520c. Further, to the extent the ALJ did not address some of the evidence cited by Plaintiff, Dr. Misra cites some of it in her opinion. As the ALJ utilized Dr. Misra's recommended RFC, this undermines Plaintiff's concern regarding any prejudice flowing from this alleged shortcoming.

F. **Effect of the ALJ's Alleged Errors**

Whether or not the ALJ erred in any of the ways alleged by Plaintiff, the ultimate question is whether substantial evidence supports the ALJ's findings. *See Perales*, 402 U.S. at 401. Here, the above discussions demonstrate substantial evidence supporting the ALJ's RFC determination generally, as well as his treatment of Dr. Harris' opinion. While there is certainly evidence that would have supported a less restrictive RFC, the ALJ's decision was within the "zone of choice."

## VI. Conclusion

Having reviewed the administrative record and the parties' briefs, Plaintiff's Motion for Judgment on the Administrative Record [Doc. 24] will be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 26] will be **GRANTED**, and the decision of the ALJ is **AFFIRMED**. Judgment will be entered in favor of the Commissioner.

**IT IS SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE